UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re: | |
| | **Case No. 99-31833** |
| EDWARD J. WATERS, | Doc. 477 |
| Debtor | [filed in main case and adversary proceeding] |
| EDWARD J. WATERS, | |
| | **Adv. No. 05-03054** |
| Plaintiff | |
| v. | Related District Court Action: |
| | No. 3:09-cv-1271 (AWT) |
| UNITED STATES OF AMERICA, | (consolidated with No. 3:10-mc-14 (AWT)) |
| RICHARD COAN, Chapter 7 Trustee, | |
| Defendant | |

**UNOPPOSED MOTION OF UNITED STATES TO WITHDRAW REFERENCE RESPECTING (1) ADV. NO. 05-03054, AND (2) 1998-TAX DETERMINATION**

The United States of America, pursuant to 28 U.S.C. § 157(d) and Bankruptcy Rule 5011, consistent with the agreement of the debtor and with the District Court's directions as described below, moves that the District Court withdraw the reference with respect to two matters that have been held in abeyance for many years: (1) Adv. No. 05-03054, in which the debtor/plaintiff has asserts stay violations and seeks damages or other relief, and (2) the *United States' Motion Pursuant To § 505(A)(1) For Determination Of Both The Estate's And The Debtor's Tax Liabilities And To Authorize Their Payment From The Escrow Account And/Or By The Trustee* ["the United States' § 505 Motion"], insofar as it ask to determine the tax liabilities of the debtor and the bankruptcy estate for 1998 (but not the 2001 year, which was resolved by the Bankruptcy Court and the subject of a Rule 54(b) judgment). The United States' § 505 Motion is docket item 477 in the main Chapter 7 case (BC Doc. 477).[1]

For reasons explained below, assuming the reference is withdrawn, the United States does not believe that any documents other than docket item 477 need to be transmitted to the District Court in

[1] "BC Doc." will be used to refer to items as docketed in Bankruptcy Case No. 99-38133. "AP Doc." will be used to refer to items in Adversary Proceeding No. 05-03054.

connection with the United States' § 505 Motion. The entire adversary proceeding file, however, should be transmitted to the District Court, assuming the reference is withdrawn.

The United States is *not* suggesting that the instant proceedings be consolidated with the one that remains pending in the District Court. To the contrary, it has moved to dismiss that proceeding for lack of bankruptcy jurisdiction. (The United States does not, however, object to consolidation if the District Court feels that is appropriate.)

It should also be noted preliminarily that, although the Chapter 7 Trustee was named as an additional defendant in Adv. No. 05-03054, the relief sought against him has been mooted by proceedings in the District Court. The docket reflects the former Trustee (Michael Daly) as the defendant, but we have substituted Richard Coan since he is the present Trustee and Bankruptcy Rule 2012(b) provides for automatic substitution without the need for a motion. It is submitted that the Trustee should be dismissed immediately after the reference is withdrawn. The proposed order submitted herewith requires Mr. Waters to file an objection to such dismissal if he disagrees.

**Facts Pertinent to Motion to Withdraw Reference**

This case has a long history of litigation between Mr. Waters and the United States which has sometimes been joined by the Connecticut Department of Revenue Service ("CDRS"). Only a limited presentation is made here as the District Court is familiar with many aspects of this case already, based on having withdrawn the reference over a contested matter commenced by the debtor in respect to his 1995, 1996, 1997, 1999, and 2000 tax liabilities for which he claimed refunds (Miscellaneous No. 3:10-mc-14), which was consolidated with an original tax refund suit for the same years in that Court (Civil No. 3:09-cv-1271, which until recently had been consolidated with a suit by the United States against the Trustee to recover erroneous refunds, Civil No. 3:06-cv- 1599).[2]

[2] Parts of this fact statement duplicate parts of a fact statement used in the government's pending motion in the District Court to dismiss, for lack of bankruptcy-related jurisdiction, the contested matter it previously withdrew from the Bankruptcy Court in which Mr. Waters seeks tax refunds, but we have made significant deletions along the way to shorten the fact statement here. The point here is that the

***Background and 7/16/2001 Stipulation***

1. Mr. Waters filed his petition in this bankruptcy case in 1997 under Chapter 13. The case was later transferred between divisions of the Bankruptcy Court in 1999 and hence bears a 1999 case number, No. 99-31833.

2. In 2000, Mr. Waters filed a separate Chapter 11 case. In early 2001, Mr. Waters, the IRS, and the State of Connecticut, Department of Revenue Services ("CDRS") entered a stipulation, so ordered on July 16, 2001 ("the 7/16/2001 Stipulation") that provided for him to convert his Chapter 13 case (this one) to Chapter 11, to dismiss his separate Chapter 11 case, and agreeing to the sale of his residence (for which Mr. Waters had a purchase offer). The agreement also included the placement into escrow of that portion of the proceeds subject to the mortgage that had been assigned by the original mortgagee, Alaska Seaboard Partners Ltd., to an entity in which Mr. Waters had invested his postpetition income for the purpose of acquiring the mortgage at a discount. More specifically, the mortgage was acquired with $1.43 million that reflected a combined investment of Mr. Waters's wholly owned offshore entity, Cape & Islands Investment Inc., Ltd. in the British Virgin Islands (CIIC-BVI), which had earned over $900,000 in late 2000, and $500,000 from a company controlled by a friend, with the two sums funneled through a newly formed third entity that received the formal assignment of the $1.9 million (balance) mortgage for $1.43 million. Prior to the 7/16/2001 Stipulation, the IRS and CDRS were asserting various theories by which to reach the mortgage proceeds as property of the estate including alter ego and equitable subordination claims. They were also concerned that Mr. Waters had not filed tax returns for years after 1992 and that any taxes for post-1992 years would remain payable from his post-bankruptcy income (invested in acquiring the mortgage) in any event, as such taxes would not be discharged. The 7/16/2001 Stipulation included provisions for Mr. Waters to have his tax returns for years 1993 through 2000 be prepared by a tax attorney he had chosen and to use the escrowed funds to pay the 1993-2000 tax liabilities and also taxes estimated

District Court should not rely on this version, if read first, to consider the pending motion to dismiss the already-withdrawn contested matter for lack of bankruptcy jurisdiction.

for 2001 (including on the sale of the residence). The agreement also provided (as the Bankruptcy Court has subsequently held) for any administrative tax expense of the bankruptcy estate to be paid from the escrowed funds. The agreement was premised in part on Mr. Waters's agreement with CIIC-BVI for it to distribute its share of the mortgage payoff to him consistent with a contract they had for annual distributions of its earnings to him. In other words, under the 7/16/2001 Stipulation, the escrowed funds were being treated as post-petition income of Mr. Waters and therefore not property of the bankruptcy estate in the 1997 case.[3] But he agreed to pay prepetition (as well as postpetition) taxes and taxes incurred by the bankruptcy estate with the escrowed funds.

2. Pursuant to the 7/16/2001 Stipulation, the Chapter 13 case was immediately converted to Chapter 11. The residence was sold in 2001 for almost $2.1 million. After paying a large property tax arrearage ($124,739) and expenses of sale, and using part of the mortgage payment to repay the roughly half-million-dollar investment made by his friend's company, the sum of $1,287,206 was due to CIIC-BVI and escrowed with Mr. Waters's bankruptcy attorney (Ira Charmoy) acting as escrow agent.

***Tax and Other Distributions from Escrow***

3. Mr. Waters then had attorney Honecker prepare his 1993 through 2000 federal and State tax returns, which he filed in late 2001 and early 2002. He also filed fiduciary income tax returns for his bankruptcy estate (Forms 1041) for 1998 and 2001.[4] The estate's returns for both those years included substantial gain income from sales of real property – in 1998 from his Martha's Vineyard vacation property (reported as a rental property) and in 2001 from his Darien, Connecticut residence. Large mortgage liens as well as property taxes were satisfied with the proceeds of each of the sales. Mr. Waters deducted the mortgage interest and property taxes for each sale on his personal tax returns. In fact, it appears he claimed the deduction for the mortgage interest paid with the proceeds of the 1998 sale of the Martha's Vineyard

[3] In 2005, Congress added § 1115 to Chapter 11, which includes postpetition income in the estate for individual Chapter 11 debtors but that provision did not apply to Mr. Waters's 1997 case.

[4] Technically, the estate's returns ran from December 1 to November 30 of each year so the 1998 return ran from 12/1/1997 to 11/30/98 and the 2001 return ran from 12/1/2000 to 11/30/2001.

property on his 1997 Form 1040 based on a sale agreement that did not close until 1998.

4. The taxes initially reported on Mr. Waters's 1993 through 2000 returns were paid from the escrowed funds pursuant to an agreed order (BC Doc. 247), referred to herein as the "4/25/2002 Tax Payment Order." That agreed order provided for a distribution to the IRS of $529,520.62 for taxes, penalties and interest for years 1993-2000 and estimated tax for 2001 (which added penalties and interest to the $329,803 in federal taxes referred to in the motion) and $130,227.99 to CDRS for taxes, penalties and interest for years 1992-93, 1995-96, and 1998-2000 and also for tax for years 1988-90 that CDRS had asserted through an audit. The 4/25/2002 Tax Payment Order also provided for a distribution to Mr. Waters, individually, of $128,000. It reserved the remaining escrowed funds of approximately $360,000 pending further developments and continued litigation, including over whether the 7/16/2001 Stipulation allowed for payment of the estate's taxes for 1998 and 2001.

***The Refund Claims***

5. Not long after filing his 1993-2000 returns and securing a distribution from the escrow to pay the reported taxes as well as the 2001 estimated tax, Mr. Waters began filing amended tax returns and claiming refunds for most of the taxes that were paid pursuant to the 4/25/2002 Tax Payment Order. The United States maintains this violated the 4/25/2002 Tax Payment Order which it claims explicitly limited any refund claims to penalties. The IRS examiner assigned to review the amended returns agreed with many of the adjustments Mr. Waters claimed on the amended returns and scheduled overpayments on the tax accounts maintained on the IRS's computer systems for 1993, 1994, 1996, 1999, and 2000 while also reducing tax still owed for 1995.[5] At the same time, Mr. Waters's original 2001-year return claimed a refund of most of the estimated 2001-year tax paid from the escrow in 2002.

6. The government refused to refund the claimed overpayments in order to preserve a right to offset the presumed overpayments to other tax liabilities that were in dispute, including the 1991 and 1995

[5] The examining agent, since retired, has informed the undersigned that he was not aware of the 4/25/2002 Tax Payment Order's language limiting refund claims to penalties and, had he been aware, he would have sought advice from IRS in-house counsel before agreeing to the adjustments to tax.

tax claims and the estate's 2001 tax (consistent with the government's position that the 7/16/2001 Stipulation covered administrative taxes too). This led to the filing by Mr. Waters on December 10, 2003, of a contested matter seeking a distribution to himself from the escrow that evolved into a proceeding in which he was seeking to have the Bankruptcy Court order the IRS to issue the presumed tax refunds to him. (BC Doc. 381.) It is that motion over which the District Court withdrew the reference in 2010 (District Court No. 3:10-mc-14).

7. The IRS responded to that 12/10/2003 motion on December 23, 2003. (BC Doc. 385.) In addition to asserting a right to setoff any overpayments against additional taxes owed both by Mr. Waters and his bankruptcy estate, the response stated that no final determination was made with regard to any refunds. The response also reflects recognition that there existed a dispute about the whether the 7/16/2001 Stipulation had agreed that taxes incurred by the bankruptcy estate would be paid from the escrowed funds. Accordingly, the IRS maintained it could withhold refunds of money that was paid out of the escrow to satisfy administrative tax liabilities of the bankruptcy estate.

8. At some point (we are unable to find the precise time), the Bankruptcy Court determined to hold the 12/10/2003 motion in stasis until it first decided the meaning and enforceability of the 7/16/2001 Stipulation – *i.e.*, whether the stipulation contemplated tapping the escrowed funds to pay the estate's liabilities, given the large combined 1998 and 2001 liabilities that Mr. Waters had reported and was maintaining could not be paid from the escrow and which formed a large part of the IRS's reason for refusing to release refunds of overpayments the examiner had determined were allowable. Many years later, the Bankruptcy Court held that the 7/16/2001 Stipulation's language does mandate payment of the estate's tax liabilities too. (BC Doc. 687); *In re Waters*, 2010 WL 2940858 (Bankr. Conn. 2010).

9. After the IRS finished its consideration of the amended returns for 1993-2000, it maintained its freeze on overpayments that it believed would be sufficient to satisfy Mr. Water's 1991 and 1995 tax liabilities, which were the only ones it believed were owed at the time. However, it mistakenly assumed that the escrowed funds that were the source of the overpayments represented property of the bankruptcy

estate and therefore it refunded the excess of the overpayments over the 1991 and 1995 tax claims to the Chapter 7 Trustee. (As the Court is aware, the United States later filed a suit to recover as erroneous the refunds sent to the Trustee, and the Trustee eventually consented to judgment in that action.)

10. Meanwhile, on March 10, 2004, the Chapter 11 case was converted to Chapter 7 and the Trustee appointed.

***The Adversary Proceeding***

11. On October 5, 2004, Mr. Waters filed a *Motion Under 11 U.S.C. § 362 & § 105: Requesting Court to Find IRS in Willful Violation of Stay by Withholding Post-Petition Tax Refunds Due Debtor [Etc.]*. (BC Doc. 437.) The United States took the position the relief sought required an adversary complaint under Bankruptcy Rule 7001 and Mr. Waters agreed to dismiss the motion without prejudice.

12. In March of 2005, Mr. Waters filed the adversary complaint (Adv. No. 05-3054) seeking damages for an alleged willful violation of the bankruptcy stay under 11 U.S.C. § 362(h) (since re-designated § 362(k)(1)) and also for alleged violations of the Internal Revenue Code and/or Due Process. The stay violation allegations were premised on the refusal to release the refunds he claimed. (AP Doc. 1.) The United States moved to dismiss that complaint partly under Rule 12(b)(6) and partly on jurisdictional grounds. The United States maintained that the allegations did not amount to a stay violation given certain facts of record in the proceedings. The United States objected to jurisdiction over the claims that it violated the tax code or due process on the basis that there is no bankruptcy jurisdiction as the alleged violations do not concern property of the estate or any rights conferred by the Bankruptcy Code and any recovery of damages would not flow to the estate but rather only to Mr. Waters individually. The claim for damages for an alleged willful violation of the stay is admittedly within the Bankruptcy Court's jurisdiction.

13. On May 24, 2005, the Chapter 7 discharge was entered, which terminated the automatic stay, except as to acts against property of the estate. 11 U.S.C. § 362(c). As a result, the United States unfroze the withheld overpayments (those not already refunded to the Chapter 7 Trustee) and credited them to the 1991 and 1995 tax claims against Mr. Waters. The United States filed a notice in the stay-violation

adversary proceeding that it had effectuated these setoffs, while its motion to dismiss for failure to state a claim upon which relief may be granted was still pending.

14. On December 13, 2005, the Bankruptcy Court denied the government's motion to dismiss Mr. Waters's adversary complaint, without prejudice to later reconsideration, because it concluded that it should first resolve the pending dispute regarding the 7/16/2001 Stipulation and Order, which it felt might moot aspects of the stay-violation complaint. (AP Doc. 39.) The government was concerned that if the meaning of the 7/16/2001 Stipulation was resolved in a manner that caused the Bankruptcy Court to conclude that there might be a stay violation, it would then be too late to seek interlocutory appeal of the denial of its motion to dismiss the complaint. Accordingly, it filed a "*MOTION PURSUANT TO RULE 8002(c) TO EXTEND TIME TO FILE APPEAL BASED ON LACK OF SERVICE OF ORDER ENTERED 12/14/05 (Unless Court Would Prefer to Grant Leave to Seek Reconsideration or Stay this Adversary Proceeding While it Determines Certain Contested Matters).*" (AP Doc. 43.) The Bankruptcy Court then stayed the proceeding (*see* docket text entries of 2/21/2006) and it has remained stayed since, except that it was mistakenly dismissed at one point and reinstated (and again expressly stayed). (AP Doc. 62.) The notion of an interlocutory appeal is now moot – the Bankruptcy Court has resolved the meaning of the stipulation and all that is left to do is determine whether there was a stay violation in light of the meaning of the 7/16/2001 Stipulation or a violation of the Internal Revenue Code or Due Process.

15. It should be noted that more recently in the District Court proceedings, the United States agreed that Mr. Waters' stay violation complaint in Adv. No. 05-3054 may be "deemed" to include a claim that the setoffs just described and/or the continued refusal to refund the alleged tax overpayments violated the discharge injunction in 11 U.S.C. § 524. This agreement was made as part of dismissal of Mr. Waters's refund suit without prejudice to his contention that withholding the refunds was an "illegal exaction" for which he maintains he can sue the United States in the Court of Federal Claims. The idea was also to preserve his claim that there was a discharge violation.

16. It should also be noted that the relief sought against the Chapter 7 Trustee is moot as a result of

the resolution of the government's suit against the Trustee in the District Court to recover erroneous tax refunds. The judgment in that matter provided for the return of the funds to the IRS without prejudice to Mr. Waters's claims against the government that he is entitled to the refunds. Accordingly, the Trustee should be dismissed immediately after the adversary proceeding is withdrawn (assuming it is).

***Government's Motion to Determine 1998 and 2001 Tax***

17. Meanwhile, the IRS conducted an audit of the 1998 and 2001 returns that Mr. Waters had filed for both himself and the bankruptcy estate. For 1998, the IRS concluded that there was no separately taxable estate because, under IRC §§ 1398 and 1399, only Chapter 7 and Chapter 11 estates of individual debtors are separately taxable and during 1998 Mr. Waters's case was under Chapter 13. Accordingly, the IRS allocated income (gain from the sale of his Martha's Vineyard vacation property) that Mr. Waters mistakenly reported on a return for his Chapter 13 estate (Form 1041) instead to his personal return (Form 1040), resulting in substantial additional tax. For year 2001, Mr. Waters had claimed as deductions on his personal return (Form 1040) all of the mortgage interest and property taxes paid when his home was sold, even though those expenses were paid from the proceeds of the sale of property of the bankruptcy estate, while reporting the gain from the sale on the Form 1041 for the estate.[6] The audit concluded with the issuance of a statutory notice of tax deficiency for 1998 and 2001, asserting unpaid tax liabilities for Mr. Waters that exceed the remaining escrowed funds.

18. The United States then (in September 2005) filed a motion pursuant to 11 U.S.C. § 505 to determine the 1998 and 2001 liabilities of *both* Mr. Waters and his bankruptcy estate in order to collect them from the escrowed funds pursuant to the 7/16/2001 Stipulation. (BC Doc. 477.) In that contested matter, the parties and Bankruptcy Court agreed to resolve 2001 first since the amount at issue for 1998 was small in comparison to 2001 tax, and because Mr. Waters and the United States at one time believed the

---

[6] Indeed, Mr. Waters was not even personally liable on the mortgage debt because it had been discharged in a previous Chapter 7 bankruptcy case – only the property of the estate remained liable *in rem*. Regardless, the estate paid the claims, not Mr. Waters personally.

1998 issues might be settled. Through a series of decisions, the 2001 tax liabilities of Mr. Waters and the estate have been adjudicated and a Rule 54(b) judgment was granted by the Bankruptcy Court in respect thereto. (BC Doc. 772, 773.) The judgment provides that the unpaid tax liability for 2001 was $370,124.13 as of April 15, 2002 (exclusive of interest and penalties), after accounting for the $94,569.87 payment that had been made pursuant to the 4/25/2002 Tax Payment Order; and that the net unpaid federal income tax liability for the bankruptcy estate for 2001is $11,878.00 (exclusive of interest and penalties).[7] The United States waived penalties in order to enable the entry of a Rule 54(b) judgment. When approximately 13 years of interest are added and amounts subsequently collected by IRS levies are accounted for, Mr. Waters's current 2001 liability for 2001 is over $680,000.

19. Mr. Waters initially appealed the Rule 54(b) judgment but his appeal was later dismissed for failure to prosecute. District Court Case No. 12-cv-1312.

20. There remains for adjudication the government's request that the Bankruptcy Court determine the 1998 taxes of Mr. Waters and his bankruptcy estate. In fact, there have been no significant proceedings on that matter in the Bankruptcy Court as the parties turned their attention first to the 2001 year and the 1998 year was held in abeyance.

**Argument**

The United States will not present extensive argument in light of the fact that, during a status conference in the related District Court proceedings, the debtor agreed that the reference should be withdrawn and the Hon. Alvin Thompson indicated that he agreed with the premises as summarized orally

[7] To be clear, an estimated tax payment for 2001 of $94,569.87 was applied to that year as a result of the distribution allowed by the 4/25/2002 Tax Payment Order (slightly less than the $99,035 Mr. Waters proposed to pay because additional penalties had accrued on the 1993-2000 years satisfied first), after which he filed a 2001 return reporting tax of $13,585 which he later amended twice, reducing reported tax to $385, and claiming a refund of all but that amount. The total tax ultimately determined was $464,694 ($26,302 less than asserted in the IRS's deficiency notice). At the same time, the estate's reported tax of $281,375 was reduced to $11,878 (not counting interest).

and directed the government to file the instant motion. Section 157(d) allows withdrawal of any case or any proceeding within a case in the discretion of the District Court for cause.

First, the bankruptcy judge that handled all aspects of this case until recently passed away and the new judge is not familiar with the long history of the proceedings. Judge Thompson, on the other hand, has developed familiarity with aspects of the proceedings though the related refund suit, the various appeals Mr. Waters initiated, and the withdrawn proceeding commenced by docket item 381.

Second, prior to 2005, the IRS was represented in this case exclusively by former Assistant United States Attorney who is now a bankruptcy judge for this district (attorney Peter Sklarew joined the AUSA in representing the IRS in this case some time in 2005). It would appropriate for the matter to be adjudicate by the District Court rather than another judge of the bankruptcy court.

Third, the remaining matter pending in the District Court is the withdrawn proceeding that was begun by the motion that is docket item 381, which evolved into an effort by Mr. Waters to compel the IRS to refund the alleged tax overpayments. The stay violation complaint concerns an alternative legal theory for either compelling the same refunds to be issued or for damages equal in amount to the refunds that Mr. Waters maintains were withheld in violation of the stay and/or discharge injunction.

Finally, the tax determination for the 1998 year may involve some of the same issues that at one time were involved in the tax refund suit for other years brought by Mr. Waters in the district court that he eventually asked to have dismissed without prejudice. That is because he carried forward as a net operating loss all the way to 1998 the same conservation easement deduction originally reported on his 1992 return that the United States had claimed in the District Court case was fraudulently inflated and for which the United States counterclaimed. There are also other relationships between the 1998 tax computations and surrounding years due to other claimed loss carrybacks and carryovers. At the same time, the principal and predicate issue for the 1998 is whether Mr. Waters is correct in insisting that the gain from the 1998 sale of

his Martha's Vineyard property is taxable to his bankruptcy estate rather than to him personally. The issue is essentially whether conversion to Chapter 7 requires the case to be treated as if in Chapter 7 from the start.

## Conclusion

The reference should be withdrawn. A proposed order is attached hereto as an exhibit.

DEIRDRE M. DALY
United States Attorney

/s/ *Christine Sciarrino*
CHRISTINE SCIARRINO (CT 03393)
Assistant U.S. Attorney
157 Church Street, 25th Floor
New Haven, CT 06510
(203) 821-3780
Email: Christine.Sciarrino@usdoj.gov

PETER SKLAREW (CT 17864)
Assistant Chief
Northern Region Civil Trial Section
Tax Division, U.S. Dept. of Justice
P.O. Box 55
Washington, D.C. 20044
(202) 307-6571
Email: peter.a.sklarew@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2015, I electronically filed the foregoing motion with the Clerk of the Bankruptcy Cot for the District of Connecticut using the CM/ECF System, which will send electronic notification of such filing to the following:

Richard M. Coan, Trustee
rcoan@coanlewendon.com

Further, I hereby certify that on August 21, 2015, a copy of the same documents have been served on Mr. Waters by e-mail, consistent with his prior agreement to accept electronic service from the United States in these proceedings, as follows:

Edward J. Waters
3124 Avalon Drive West
New Canaan, CT 06840
Darien, CT 06820
ejwaters@gmail.com

/s/ *Christine Sciarrino*
CHRISTINE SCIARRINO
Assistant United States Attorney